**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TUCKER INDUSTRIAL LIQUID COATINGS, INC., | : : : | 1:11-cv-1416 |
| Plaintiff, | : : | Hon. John E. Jones III |
| v. | : : | |
| BOROUGH OF EAST BERLIN, DAVID RICHARDS, ROBERT CLAYTON, DAVID WOODWARD, and CHARLES PHILLIPS, | : : : : : | |
| Defendants. | : | |

**MEMORANDUM**

**January 13, 2015**

This matter is before this Court on a Motion for Summary Judgment filed by Defendants Richards, Clayton, Woodward, and Phillips, protesting Plaintiff's equal protection claim. For the reasons articulated herein, the Court shall grant the Motion.

I.     **FACTUAL BACKGROUND**

By way of introduction, the equal protection challenge filed by Tucker Industrial Liquid Coatings ("Tucker") largely focuses on Defendants' actions in seeking to enforce a use provision of a zoning ordinance. However, this dispute cannot be viewed in isolation, and both parties detail at-length various other

contentions coloring this litigation.  Most eminently, the parties discuss odor emission issues and environmental protection violations implicating Tucker and other businesses in the Borough.  Accordingly, our factual recitation will outline the primary zoning dispute while also seeking to provide relevant context. Although Defendants were only elected to the East Berlin Borough Council in January 2008, our review begins a decade prior.

Tucker is a contract coating applicator, applying finish coatings to component parts manufactured by others.  (Doc. 93, ¶ 1).  It is owned by Bernard and Brian Tucker and, since 1998, has operated a facility at 407 North Avenue in the Borough of East Berlin, Pennsylvania.  (*Id.* ¶ 2; Doc. 117 ¶ 2).

Not long after Tucker commenced operations, the Pennsylvania Department of Environmental Protection ("DEP") discovered various compliance issues and violations at Tucker's facility, including surface coating and emissions reporting violations and failure to obtain a plan approval and operating permit.  (Doc. 93, ¶ 3).  Tucker and DEP resolved the matter by way of a Consent Assessment of Civil Penalty, entered into on November 27, 2002, pursuant to which Tucker agreed to pay a civil penalty of $5,500.00.  (Doc. 92-4, pp. 241-46).

Also in 2002, the Borough of East Berlin revised its zoning ordinance, and under the new ordinance and zoning map, Tucker's North Avenue facility was in

the district zoned mixed use.  (Doc. 93, ¶¶ 5-6).  The ordinance permits light industrial use in the mixed use district by special exception.  (*Id.* ¶ 7).

Tucker later sought to expand its North Avenue facility by adding a 130 by 160 foot addition purposed to house additional painting booths for its business operations.  (*Id.* ¶ 8).  Tucker applied for and received a building permit from the Borough on August 10, 2005.  (Doc. 102-6, p. 2).  While the permit indicated that the construction was intended for industrial use, it did not specify whether or not a variance or special exception was required.  (*Id.*).  The permit was issued and executed by then Borough Manager T. Michael Thoman but was not signed by the applicant.  (*Id.*).[1]  Construction commenced thereafter, and the addition was completed and operational by 2006.  (Doc. 93, ¶ 14).[2]

During 2007 and 2008, malodor in the Borough was a regular topic of discussion at Council meetings.  Residents of East Berlin lodged air quality grievances against several businesses in the Borough, with approximately 13

---

[1]  Also, the permit incorrectly lists the applicant as "Trucker Property Lp" but correctly lists the 407 North Avenue address.  (Doc. 102-6, p. 2).

[2]  Defendants note that Tucker failed to timely obtain a use and occupancy permit for the expansion, in that it had begun using the space prior to September 25, 2006, when the permit was actually issued.  (Doc. 93, ¶¶ 15-16).  Tucker does not appear to contest the certitude of this allegation, but challenges its relevancy as Defendants had not yet been elected to Borough Council.  (Doc. 117, ¶ 16).

complaints addressed to Tucker during that time.  (Doc. 92-5, pp. 2-14).[3]  For example, residents complained that the smell of paint fumes was so strong that it woke them up, was "overwhelming," affected their breathing, choked them, made their eyes water, and burned their throats.  (*Id.*).  The Borough Council contacted DEP and the Environmental Protection Agency to investigate the complaints. (Doc. 92-4, pp. 594, 599).

Meanwhile, in January 2008, Defendants Richards, Phillips, Clayton, and Woodward were elected to the East Berlin Borough Council, with Mr. Richards appointed as Council President.  (Doc. 93, ¶¶ 19, 21).  Also around that time, Tucker acquired another building, the former Tyco facility, on 224 East King Street in East Berlin.  (*Id.* ¶ 31; Doc. 75, ¶ 18).

In the spring and fall of 2008, DEP again found Tucker's North Avenue facility in violation of various state and federal environmental standards.  DEP issued a Notice of Violation on May 18, 2008, describing violations commencing in 2006 that included the construction and operation of three spray paint booths without receipt of a plan approval or operating permit, and emission of excessive amounts of a hazardous air pollutant (namely, toluene).    (Doc. 92-5, p. 151-52).

---

[3] Three of the complaints were filed by Defendant Woodward and/or his wife.  (Doc. 92-5, pp. 8, 10, 11).

DEP followed with a second Notice of Violation on November 14, 2008, outlining additional offenses implicating national emissions standards.  (Doc. 92-6, pp. 8-10).  Tucker was responsive to both Notices, submitting a plan approval application to DEP's Air Quality Program after receiving the first, and notifying DEP that it had employed an environmental expert after receiving the second.  (Doc. 92-5, p. 167; Doc. 102-15, p. 2).  On April 16, 2009, Tucker and DEP entered into a Consent Order and Agreement ("COA").  (Doc. 92-6, pp. 15-31).  Pursuant to the COA, Tucker agreed to pay a $154,000.00 civil fine for, among other things, toluene emissions and operating without a permit.  (*Id.* pp. 21, 22, 26).

During the DEP inquiry and before the entry of the COA, Mr. Richards in his capacity as Council President wrote at least two letters to DEP, outlining the Borough's relevant concerns.  (Doc. 92-5, pp. 158-60; Doc. 92-6, pp. 2-6).  He also testified that he drove to Harrisburg to review Tucker's public DEP file, noting that DEP would not provide any information remotely.  (Doc. 92-4, p. 490).

Soon after Tucker's resolution with DEP, the Borough Council determined to take action against Tucker based on Tucker's operation of an industrial use in a

mixed use zoning district without a special exception.[4]  The Borough sent two

letters to Tucker, both dated August 4, 2009, signed by Mr. Richards,[5] and bearing

the heading "Enforcement Notice."[6]  The mailing regarding the 407 North Avenue

property advised that industrial uses are not permitted in the mixed use zoning

district without special exception approval by the East Berlin Zoning Hearing

Board (the "ZHB"), which Tucker had not sought.  (Doc. 92-6, p. 33).  As

Tucker's use of the property was industrial, the Borough advised that it was

presently in violation of the Zoning Ordinance and "must cease and desist" the

prohibited activity within 30 days.  (*Id.*).  The letter notified Tucker of its right to

---

[4]  The parties dispute how the aforementioned zoning issue came to light.   Mr. Richards testified that when he and the other defendants took office, there were businesses out of compliance with the zoning ordinance, and one of the first tasks of his council was to start correcting enforcement of the Borough's ordinances.  (Doc. 92-4, pp. 443-44).  As part of this effort, Mr. Richards represented that he reviewed all building permits issued from 2002 to 2007, which amounted to about 25 permits per year.  (*Id.* p. 467).  He stated that, upon reviewing Tucker's permit for the North Avenue expansion, "you could see that there was no variance requested and the entire building permit itself was pretty much invalid.  It doesn't meet the borough requirements for the building permit."  (*Id.*).  He went on to note that only two of the permits he reviewed failed to include the applicant's signature, one of those permits being Tucker's.  (*Id.* pp. 467-68).  Tucker maintains that Defendants did not actually take interest in any other permit applicants, targeting Tucker alone.  (Doc. 117, ¶ 42).  Tucker notes that Defendants did not take action regarding the other unsigned building permit, which was for an above-ground swimming pool.  (*Id.*; Doc. 92-4, p. 468).

[5]  The parties agree that the letters were issued by the Borough because the Senior Zoning Officer was "not comfortable" to execute the notices "due to recent events," including a dispute about a sign on Tucker's property and "media attention."  (Doc. 93, ¶ 47).

[6]  Tucker vehemently disagrees that these communications were enforcement notices, instead characterizing them as cease and desist letters.  (*See, e.g.*, Doc. 117, ¶ 45).  For our purposes, we will refer to them – according to their heading – as "enforcement notices."

appeal to the ZHB and warned that noncompliance would result in a civil enforcement proceeding. (*Id.* p. 34).

The other letter concerned the 224 East King Street facility. In similar fashion, the missive advised that the property in issue was zoned as part of the mixed use district, that Tucker was operating a light industrial or other industrial use at the location, and that no special exception approval had been requested from the ZHB. (Doc. 92-6, p. 36). Finding Tucker in violation of the Zoning Ordinance, this letter, as well, required Tucker to "cease and desist" the industrial use within 30 days. (*Id.*). It also advised of Tucker's appeal rights and admonished that a civil enforcement action could be filed. (*Id.* p. 37).

Tucker filed a timely appeal and special exception applications for each property to operate a light industrial use. (Doc. 93, ¶ 53). The ZHB held a total of seven hearings on Tucker's applications, and it issued a 26 page decision on July 6, 2010. (*Id.* ¶¶ 54-55; Doc. 92-6, pp. 97-122). The ZHB concluded that Tucker did not have a vested right in the light industrial use of the addition to the North Avenue facility; was not entitled to a continuation of the King Street facility's non-conforming light industrial use; and failed to adequately demonstrate the right to a special exception for light industrial use within either property. (Doc. 93, ¶ 55).

Tucker filed an appeal from the ZHB's decision, arguing that it was an abuse

7

of discretion to deny Tucker's applications for a special exception.  The Court of

Common Pleas for Adams County issued a decision on December 6, 2011, which

affirmed in part and reversed in part the ZHB's determination and, also, held that

Tucker had received due process of law.  (Doc. 92-6, pp. 124-46).  The court held

that the ZHB abused its discretion when it found that Tucker was not entitled to a

vested right in its light industrial use of the North Avenue expansion.  (*Id.* p. 136).

Having held that Tucker possessed such vested right, the court reasoned that

Tucker did not require a special exception for its use of the property.  (*Id.* p. 144).

However, the court affirmed the determination that Tucker was not entitled to a

continuation of a non-conforming use at the King Street property and a special

exception was not appropriate.  (*Id.* pp. 143-46).

## II.    PROCEDURAL HISTORY

The instant action was commenced with the filing of a Complaint on August

1, 2011.  (Doc. 1).  After several procedural turns, Tucker filed a Second Amended

Complaint on November 26, 2012, alleging an unconstitutional taking under the

Fifth Amendment; violation of its equal protection and substantive due process

rights pursuant to the Fourteenth Amendment; and municipal liability.  (Doc. 62).

Defendants filed a motion to dismiss (Doc. 63), and we issued a Memorandum and

Order on March 20, 2013, dismissing the action in its entirety but permitting

Tucker leave to amend its pleading (Doc. 72).  As to Tucker's equal protection

claim, we found that Tucker had "altogether failed to plead any facts" showing that

it had been intentionally treated differently from others similarly situated.  (*Id.* pp.

20-21). We expressed that Tucker's broad allegations that it was similarly situated

to, *inter alia*, a community center, residential development, church, farm, and a

municipal building were insufficient to carry its burden, noting our "serious doubts

about whether a church or community center . . . bear *any* similarity to an industrial

coating and painting business."  (*Id.* p. 21 (emphasis in original)).

Tucker submitted its now-operative Third Amended Complaint (Doc. 75) on

April 9, 2013, and Defendants again moved to dismiss the pleading (Doc. 76).  We

issued a Memorandum and Order on July 9, 2013, granting the motion on all

counts except as to Tucker's equal protection claim.  (Doc. 83, p. 32).  We noted

that Tucker's theory was still unavailing for the reasons previously iterated,

inasmuch as it persisted in advancing a local community center, residential

development, church, and municipal building as comparator entities.  (*Id.* pp. 15-

16).  However, Tucker had also asserted that it was similarly situated to Pennwood

Products, a manufacturer of wood products, and Zeigler Brothers, an animal feed

producer, located within the Borough.  (*Id.* p. 16).  Tucker described that all three

of the companies "engage in industrial production, are of similar size, and maintain

a comparable workforce; all entities use similar lighting; all entities are geographically proximate to one another; and all entities are regulated by the DEP." (*Id.*).  Noting these comparisons, we held that Tucker had alleged sufficient facts to demonstrate the existence of other similarly situated entities.  We also held that Tucker had shown that Defendants' actions were irrational based on Tucker's averments that "it was required to obtain an occupancy permit and was targeted with cease and desist orders where similarly-situated entities engaging in similar activities were not." (*Id.* pp. 17-18).  Lastly, we held that Defendants did not have qualified immunity because Tucker had shown the deprivation of a constitutional right, and the right was clearly established at the time of the purported violation. (*Id.* pp. 18-19).

Soon after the resolution of the second motion to dismiss, Defendants submitted an Answer (Doc. 85) to the Third Amended Complaint.  On July 1, 2014, they filed the instant Motion for Summary Judgment.  (Doc. 92).  That Motion has been fully briefed and is ripe for our review.

## III.   STANDARD OF REVIEW

Summary judgment is appropriate if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. Civ. P. 56(a).  A dispute is "genuine" only if there is a

sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a fact is "material" only if it might affect the outcome of the action under the governing law. *See Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 172 (3d Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A court should view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences therefrom, and should not evaluate credibility or weigh the evidence. *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

Initially, the moving party bears the burden of demonstrating the absence of a genuine dispute of material fact, and upon satisfaction of that burden, the non-movant must go beyond the pleadings, pointing to particular facts that evidence a genuine dispute for trial. *See id.* at 773 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). In advancing their positions, the parties must support their factual assertions by citing to specific parts of the record or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. Civ. P. 56(c)(1).

A court should not grant summary judgment when there is a disagreement

about the facts or the proper inferences that a factfinder could draw from them.
*See Reedy v. Evanson*, 615 F.3d 197, 210 (3d Cir. 2010) (citing *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982)).  Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  *Layshock ex rel. Layshock v. Hermitage Sch. Dist.*, 650 F.3d 205, 211 (3d Cir. 2011) (quoting *Anderson*, 477 U.S. at 247-48) (internal quotation marks omitted).

## IV.   DISCUSSION

To reiterate, only Tucker's equal protection claim remains.  Tucker asserts that Defendants violated its equal protection rights when they reviewed Tucker's DEP file and also issued Enforcement Notices to Tucker, but did not take like action against those alleged to be similarly positioned.  To prevail on an equal protection claim advanced by a "class of one," a plaintiff must demonstrate that (1) it "has been intentionally treated differently from others similarly situated" and (2) "that there is no rational basis for the difference in treatment."  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (*per curiam*).  We take each prong in turn.

### A.   Whether Tucker was intentionally treated differently from others similarly situated

Tucker's equal protection claim is predicated on its position that Zeigler

12

Brothers and Pennwood Products are appropriate comparator entities.  As stated, Zeigler is a producer of animal feeds and Pennwood manufactures wood products. In Tucker's view, these two companies are similarly situated to it since they are located within the Borough's mixed use district, engage in industrial production, emit odors eliciting citizen complaints, and have violated DEP air quality regulations.  (Doc. 101, p. 23).

Defendants argue that Tucker is not similarly situated to either Zeigler or Pennwood.  They concede that all three businesses are located in the Borough's mixed use district (Doc. 94, p. 18), but emphasize that the companies operate in wholly different industries.  (Doc. 92, ¶ 80).  They state that there is no evidence that the three companies employ a similar number of employees, and that Tucker has two industrial facilities while the other entities have one facility each.  (*Id.* ¶¶ 81-82).  In addition, they highlight that only Tucker had filed a building permit that was unsigned by the applicant and misidentified in the first instance, and also that Tucker alone was subject to two Notices of Violation by DEP, which resulted in a Consent Order and Agreement and a civil penalty of $155,000.  (*Id.* ¶¶ 83-84).

Tucker responds that "relevant aspects for comparison would include business type, general locale of facilities, whether odor is emitted, regulation of odor emission, and complaints of odor against the entities" (Doc. 101, p. 27), but

13

that "[w]orkforce size and proximity to one another are not relevant aspects for comparison when the claim involves difference in treatment with regard to 'odor problems.'" (*Id.*, p. 27). Tucker disputes that Pennwood and Zeigler each operate out of one facility, maintaining that all three business have two facilities, respectively.  (*Id.* p. 28).  In addition, Tucker raises for the first time that Pennwood constructed a facility in the mixed use district but was not required to procure a special exception.  Specifically, the Borough issued a building permit to Pennwood in 2007 when Pennwood sought to rebuild after a fire.  (Doc. 117, p. 24, ¶ 13; *see* Doc. 102-27).  Tucker submits that the new facility differed from the previous building in that it was upgraded and improved, but does not assert that Pennwood expanded its space.  (Doc. 101, p. 40).  Although the site was intended for industrial use, Defendants did not serve Pennwood with an enforcement notice requiring it to obtain a special exception.  (Doc. 117, p. 24, ¶ 13).

Entities are similarly situated for purposes of the equal protection clause when they are alike "in all relevant aspects."  *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir. 2008) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)) (internal quotation marks omitted).  In our Circuit, a plaintiff need not show that comparators are *identical* in all relevant aspects but rather that they share pertinent similarities.  *See Borrell v. Bloomsburg Univ.*, 955 F. Supp. 2d 390, 405 (M.D. Pa.

2013).  "Determining whether an individual is 'similarly situated' to another individual is a case-by-case fact-intensive inquiry."  *Id.* (quoting *Chan v. Cnty. of Lancaster*, No. 10-3424, 2011 WL 4478283, at *15 (E.D. Pa. Sept. 26, 2011)) (internal quotation marks omitted).

Here, Tucker has submitted evidence that all three businesses are located in the Borough's mixed use district and engage in industrial activity.  Especially pertinent, Tucker has shown that Pennwood also received a building permit for a construction project in the mixed use district with an intended industrial use.  Like Tucker's permit, Pennwood's did not indicate whether or not a variance or special exception was required.  Although it is not abundantly clear to us, it would appear that Pennwood may have also necessitated a special exception or variance in order to continue a light industrial use in its new building.  (Doc. 92-4 (Borough of East Berlin Zoning Ordinance (2002) §§ 402(C), 701(A), 703)).  However, there is no indication that Pennwood received an enforcement notice or was otherwise required to seek a special exception.  Moreover, Defendants do not argue against the proposition that Pennwood was treated more favorably in this regard or otherwise produce evidence to the contrary.  Based on the aforementioned common characteristics and giving Tucker the benefit of all reasonable inferences, we find that Tucker and Pennwood could be considered similarly situated for purposes of

an equal protection analysis and that Tucker was treated differently.

**B.      Whether there was no rational reason for the differential treatment**

Having determined that there is a triable issue as to whether Tucker was intentionally treated differently than others similarly situated, we must next consider whether the differential treatment was rational.

In what we can only assume as candor, Defendants express their rationale not in terms of Tucker's zoning use violation, as set forth in the Enforcement Notices, but as an effort to moderate emissions.  In Defendants' words, "[t]he Borough Council did not intend to shut Tucker down or drive Tucker out of town; it wanted Tucker to clean up its operation and correct the odor problem."  (Doc. 94, p. 19).  They distinguish that, while Tucker was uncooperative and unresponsive to the Borough Council's concerns regarding zoning and public safety matters, Zeigler, for example, took corrective action on an odor problem without the need for an enforcement action and Pennwood, as well, exhibited a spirit of cooperation. (Doc. 92, ¶¶ 86-91).  In addition, Defendants highlight that the enforcement notices were never enforced.  (*Id.* ¶ 94).

In response, Tucker does not argue that mitigation of odor and air pollutants was an irrational basis for taking action against it.  Rather, Tucker argues that Defendants' asserted reason was mere pretext, and the disparate treatment resulted

16

from Defendants' "arbitrary disdain" for Tucker.  (Doc. 101, pp. 24, 33).  Tucker argues that "if the Defendants' legitimate objective was to correct an odor problem, it [sic] would also send letters to Pennwood and Zeigler who also emitted odors due to their industrial production; had DEP violations for air pollution; and had odor complaints filed against them from Borough citizens throughout the relevant time period."  (*Id.* pp. 36-37) (footnotes omitted).  In support, Tucker cites the East Berlin Borough Council Meeting Minutes of December 22, 2009 (Doc. 102-30), recounting that former Council member Jacque Hoffman described the current Council as incompetent and generally motivated by "personal vendettas."  (*Id.* p. 2).  Tucker also highlights the testimony of former Borough Manager T. Michael Thoman, who retired from his position just before Defendants took office.  (Doc. 92-4, p. 385).  Mr. Thoman stated that he left his position because he could not "see eye to eye" with Defendants and disagreed with the way they ran the council (at one point noting that they were Democrats on a council that had been historically Republican).  (*Id.* p. 385, 391).  In his view, Defendants targeted Tucker, Pennwood, and Zeigler, but eventually "got off the other ones and just stayed . . . on Tucker."  (*Id.* p. 391, 393).  As to Tucker specifically, Mr. Thoman stated that Defendants  "picked on" Tucker for no other reason than that "they just went hunting stuff to complain about."  (*Id.* p. 388).

17

To succeed on a class-of-one claim, a plaintiff must show that the differential treatment was "irrational and wholly arbitrary." *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 286 (3d Cir. 2004) (quoting *Olech*, 528 U.S. at 564) (internal quotation marks omitted).  "These challenges fail when 'there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'"  *Highway Materials, Inc. v. Whitemarsh Twp.*, 386 Fed. App'x 251, 259 (3d Cir. 2010) (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)).  The irrational and wholly arbitrary "standard is doubtless difficult for a plaintiff to meet in a zoning dispute, . . . and we do not view an equal protection claim as a device to dilute the stringent requirements needed to show a substantive due process violation [which utilizes a "shocks the conscience" test]." *Eichenlaub*, 385 F.3d at 287 (internal citation omitted).

In the matter *sub judice*, Tucker has failed to meet its heavy burden of showing that Defendants had no rational justification for treating Tucker differently.  It is clear that Tucker's 2006 expansion, adding new paint booths, resulted in increased emissions which grieved Borough residents, created serious environmental protection violations, and prompted strong corrective action from DEP.  For Defendants to review Tucker's public DEP file under these circumstances is far from irrational.  Nor can we say it was irrational for

Defendants to issue Enforcement Notices seeking compliance with the Borough's

zoning ordinance where Tucker's industrial activities were at the root of the

aforementioned problems.  Importantly, the record before us does not suggest that

Pennwood's (or Ziegler's) industrial activities engendered environmental or

community concerns as serious and pervasive as Tucker's.  While Defendants'

issuance of a zoning use violation seems less than ingenuous – as they concede

they really wanted Tucker to "correct the odor problem" – we cannot say that it

was so wholly arbitrary as to constitute a constitutional violation.  Our rejection of

Tucker's equal protection claim harmonizes with our previous dismissal of its

substantive due process claim since, as observed by the Third Circuit, it is "very

unlikely that a claim that fails the substantive due process test will survive under an

equal protection approach."  *Eichenlaub*, 385 F.3d at 287.[7]

Tucker's efforts to explain Defendants' actions as motivated purely by

animus or "personal vendettas" is unavailing.  Although Tucker has introduced

some evidence that personal reasons motivated Defendants to focus attentions on

---

[7] Also apparent, from a procedural standpoint, is that Tucker received ample process on
the underlying zoning violation.  As discussed *infra*, Tucker appealed the Enforcement Notices
and filed applications for a special exception, and the ZHB held seven hearings on the matter.
The ZHB filed a 26-page ruling, including findings of fact and conclusions of law, and Tucker
again appealed.  The appeal was lodged in the Court of Common Pleas for Adams County, and
that proceeding included oral argument.  The Common Pleas Court held that the ZHB did not
violate Tucker's right to a fair and impartial tribunal, and also ultimately overturned a portion of
the ZHB's ruling, resulting in Tucker's continued industrial use of its North Avenue facility.

Tucker rather than other "odor-emitting" businesses in the Borough, Tucker has made no genuine attempt to refute any possible rational bases for Defendants' conduct.  *Cf. Highway Materials, Inc.*, 386 Fed. App'x at 259 (although landowner showed that the municipality intentionally refused to work with it, it did not demonstrate that there was no rational reason for the denial of its development proposal).[8]

Thus, viewing the record in full, no reasonable jury could find that Defendants' actions were wholly arbitrary and unrelated to legitimate local interests.  Accordingly, Tucker's equal protection allegation must fail.

Having found Tucker's claim unmeritorious, we need not discuss whether Defendants are entitled to absolute or qualified immunity.

---

[8] For the sake of thoroughness, we note that Tucker's equal protection claim is styled only as a class-of-one argument.  However, in similar instances, plaintiffs have also based their equal protection claims on impermissible selective enforcement of a facially valid law.  *See, e.g.*, *Fruchtman v. Town of Dewey Beach*, ___ F. Supp. 2d ___, 2014 WL 3721320 (D. Del. July 24, 2014) (selective enforcement of municipal code).  "To establish a selective-enforcement claim, a plaintiff must demonstrate (1) that he was treated differently from other similarly situated individuals, and (2) that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor, ... or to prevent the exercise of a fundamental right."  *Dique v. N.J. State Police*, 603 F.3d 181, 184 n.5 (3d Cir. 2010) (citation and internal quotation marks omitted).  In terms of the second prong, "where the plaintiff does not allege that the differential treatment occurred because of his or her status in a protected class, or that the treatment prevented the exercise of a constitutional right, the plaintiff must present evidence of a malicious or bad faith intent to injure."  *Dombrosky v. Stewart*, 3:10-1477, 2012 WL 3686779, at *6 (M.D. Pa. Aug. 27, 2012), *aff'd*, 555 F. App'x 195 (3d Cir. 2014) (citation and internal quotation marks omitted).  For many of the same reasons previously discussed, Tucker would be unsuccessful on this theory, as well, not least because there is insufficient evidence of Defendants' malicious intent.

An appropriate order shall issue, entering judgment in favor of Defendants.